CLERK'S OFFICE U.S. DIST. COURT
AT ROANOKE, VA
FILED

NOV 30 2011

JULIA C. DUDLEY, CLERK
BY: /s/
DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

| | | |
|---|---|---|
| **FRANCIS DAVID SHERMAN,** | ) | **CASE NO. 7:11CV00513** |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | **MEMORANDUM OPINION** |
| vs. | ) | |
| | ) | |
| | ) | |
| **BOBBY RUSSELL, ET AL.,** | ) | **By: Glen E. Conrad** |
| | ) | **Chief United States District Judge** |
| **Defendant(s).** | ) | |

Francis David Sherman, a Virginia inmate proceeding pro se, filed this civil rights action pursuant to 42 U.S.C. § 1983, alleging that defendants have violated his due process rights by housing him at the Southwest Virginia Regional Jail ("SVRJ") and the Western Virginia Regional Jail ("WVRJ") although he is currently detained under federal criminal charges. After careful review of Sherman's allegations, the court concludes that they fail to state any actionable claim and that his complaint is properly dismissed.

I

The following facts and allegations are relevant to Sherman's claims for relief. Authorities filed a criminal complaint on July 1, 2010 in the Abingdon Division of this court, charging that Sherman had knowingly failed to update a registration in April 2009 as required by the Sex Offender Registration and Notification Act, 18 U.S.C. § 2250(a)(3). See Case No. 1:10CR00039, ECF No. 1. An arrest warrant for Sherman issued the same day. Id., ECF No. 2. Federal authorities did not arrest Sherman pursuant to that warrant, however, until September 22, 2010 in Grand Forks, North Dakota. Id., ECF No. 3. An indictment bringing the same charge issued on October 19, 2010. Id., ECF No. 10.

Forty days after his arrest, employees of the United States Marshals Service ("USMS") transported Sherman to Virginia for proceedings on the federal charge. He arrived at SVRJ in Abingdon, Virginia, on October 31, 2010. Prison officials immediately placed him in administrative segregation, a section of the jail where inmates must be in full restraints whenever they leave their cells for any reason. Sherman remained in administrative segregation for 141 days, from October 31, 2010 until March 20, 2011. During this time, he was allowed to participate in outdoor recreation and other out-of-cell activities only in full restraints. He was not allowed to attend church services.

In early March 2011, Sherman asked his attorney to make an attempt to have him transferred to WVRJ in Salem, Virginia, believing that he would be detained under fewer restrictions there. He was granted the transfer on March 20, 2011.

At WVRJ, officials continued to detain him in the administrative segregation unit and required him to be in full restraints whenever he left his cell. Officials detained him under these restrictions for 157 days, from March 20 to July 24, 2011. He was unable to attend church services or participate in recreation "due to the full restraint order."

When Sherman asked jail officials why he was being held in segregation, they informed him that the USMS considered him to be an escape risk. Officials did not address Sherman's inquiry about why the USMS escape risk classification required him to be in full restraints during recreation and prevented him from going to church services. Jail officials, at one time,

offered to consider reducing Sherman's level of restriction, but almost immediately changed their minds and continued to require that Sherman be in restraints whenever he left his cell.[1]

Sherman complains that conditions under administrative segregation were unnecessarily harsh, given the fact that he had never misbehaved as a prisoner. While officers are transporting him to or from his cell to various activities, they do not offer any small talk. Sherman has spent virtually all his time on his bed, "waiting for the next meal, the next change of shift, the next shower day, the next court appearance," and so on. He believes that he has lost weight under these conditions and complains that he has not seen a newspaper.

He sues numerous officials at the jail, as well as "unknown United States Marshals . . . who[ are] legally responsible for the overall operation" of housing federal prisoners at the jail. He complains that detaining him under administrative segregation conditions without a hearing violated his due process rights and constituted "retaliation" when he had not committed any misconduct as a prisoner.[2] Sherman seeks monetary damages and injunctive relief directing that he be housed under conditions less restrictive than administrative segregation.

---

[1] Sherman alleges that one jail official offered, on condition of good behavior during a test period, to allow Sherman to forego full restraints outside his cell. During the first day of this test period, however, officers reported that Sherman was shaking the fence in the gymnasium, and the conditional offer of fewer restrictions was rescinded. Sherman complains that the recreation officers at first falsely stated that Sherman was shaking the outside fence, but later admitted that it was an indoor fence in the gymnasium. Whatever Sherman's specific behavior, it convinced prison officials, in their discretion, that he remained a sufficient risk to warrant continued restrictions as otherwise indicated by the escape risk designation the USMS had assigned to him.

[2] Sherman also believes that "he was coerced into taking a plea deal due to the mental and emotional stress" of the restrictive jail conditions required by the USMS escape risk classification. Sherman does not raise this allegation as a separate civil rights claim, nor could he, so long as his federal conviction stands. See Heck v. Humphrey, 512 U.S. 477, 486-87 (1994) (holding that "in order to recover damages for . . . harm caused by actions whose unlawfulness would render a conviction or sentence invalid, a § 1983 plaintiff must prove that the conviction or sentence has been reversed. . . . . A claim for damages bearing that relationship to a conviction or sentence that has not been so invalidated is not cognizable under § 1983") (footnote omitted).

## II

To state a cause of action under § 1983, a plaintiff must establish that he has been deprived of rights guaranteed by the Constitution or laws of the United States and that this deprivation resulted from conduct committed by a person acting under color of state law. West v. Atkins, 487 U.S. 42 (1988). The court is required to dismiss any action or claim filed by a prisoner proceeding in forma pauperis if it determines the action or claim is frivolous, malicious, or fails to state a claim on which relief may be granted. 28 U.S.C. § 1915A(b)(1). After a review of the allegations, the court concludes that they fail to allege facts stating any plausible claim actionable under § 1983.

Claims concerning confinement conditions imposed upon pretrial detainees are to be evaluated under the Due Process Clause of the Fifth Amendment. Bell v. Wolfish, 441 U.S. 520, 535-538 (1979). Due process proscribes punishment of a detainee before proper adjudication of guilt has been accomplished. Id. Accordingly, in evaluating the constitutionality of conditions of confinement for pretrial detainees, the court must determine whether the challenged conditions amount to punishment. Id. Restrictive conditions of confinement cannot be considered punishment so long as they are reasonably related to a legitimate, governmental purpose, such as institutional security, and are not excessive in relation to that purpose. Id.

Under these principles, Sherman's allegations fail to give rise to any claim that defendants have deprived him of constitutionally protected rights. First, his own allegations indicate that federal authorities located and apprehended him in North Dakota, many hundreds of miles from the jurisdiction in which he committed the conduct for which he was charged with federal crimes. This fact clearly supports the USMS decision to classify Sherman as a possible escape risk and to require that he be housed under conditions that would limit his opportunities to

escape. The nature of his charge, failing to comply with registration requirements, also supports a reasonable belief that he might require extra security measures to ensure his compliance with legal restrictions. Sherman alleges no facts on which he could prove that his escape risk classification was an exaggerated response to the circumstances under which he was arrested and brought to justice in Virginia.

Second, Sherman fails to allege any facts indicating that state officials assigned him to administrative segregation merely for punitive purposes. He admits that officials told him consistently that he was assigned to segregation because of the way the USMS had classified him. Furthermore, the restrictions of which he complains—full restraints whenever he was outside his cell, no contact with other groups of inmates (such as during group church services), and regular searches of his personal property items—are reasonably related to the prison officials' legitimate interest in ensuring the security of the institution. These restrictions limit the opportunities he may have to attempt an escape or to obtain information or property items to assist him in an escape.

For the foregoing reasons, the court cannot find that the restrictive conditions under which Sherman has been housed have violated his due process right to be free from punitive conditions until he was convicted. Therefore, the court will summarily dismiss Sherman's due process claims concerning his detention as a pretrial detainee.

Moreover, court records indicate that on August 3, 2011, Sherman entered a guilty plea to two counts of the federal criminal indictment and is currently scheduled for sentencing in January 2012. Although his conviction does not extinguish his liberty interests, it does change the nature of his liberty interests. Convicted felons serving prison sentences have no independent due process right to be housed in any particular prison or in a prison with less

restrictive conditions. <u>Meachum v. Fano</u>, 427 U.S. 215, 224 (1976). While state prison regulations may create a liberty interest in avoiding a particular status change without a hearing, such liberty interests for convicted felons are "limited to the freedom from restraint which, while not exceeding the sentence in such an unexpected manner as to give rise to protection by the Due Process Clause of its own force, nonetheless imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." <u>Sandin v. Conner</u>, 515 U.S. 472, 484 (1995).

Under these principles, Sherman's detention in administrative segregation since August 3, 2011 does not give rise to any due process claim. His conviction extinguished his liberty interests to the extent that prison officials, including the USMS, obtained discretion to house him in whatever prison or segregation unit they deemed appropriate to address the level of risk his crime and his background presented. <u>Meachum</u>, 427 U.S. at 224-25. Moreover, he has not alleged any facts indicating that the degree of restriction applied to him represented an atypical hardship when compared to the ordinary incidents of a criminal sentence under Virginia prison regulations so as to create any federally protected liberty interest requiring a hearing on his housing status assignment. <u>Sandin</u>, <u>supra</u>. For these reasons, the court will summarily dismiss Sherman's due process claims concerning his detention since his guilty plea.

Sherman mentions other dissatisfactions with various elements of his confinement at the two jails where he has been detained in Virginia since his arrest. He fails, however, to state these concerns as separate claims for relief under § 1983. In any event, his allegations are insufficient to support any constitutional claim concerning these additional issues. Although he complains that he was not allowed to attend group church services, he fails to allege facts indicating that this condition placed a substantial burden on his ability to exercise his religious beliefs. <u>See</u>

O'Lone v. Estate of Shabazz, 482 U.S. 342 (1987). His allegations that officials restricted his ability to participate in recreation do not rise to constitutional proportions, as he fails to allege any serious or significant injury he suffered as a result. See Strickler v. Waters, 989 F.2d 1375, 1380-1381 (4th Cir. 1993). His allegation that officials confiscated legal paperwork from his cell states no claim that their actions deprived him of access to the court, since he fails to allege any adverse effect on his litigation efforts. See Lewis v. Casey, 518 U.S. 343 (1996). Finally, Sherman's conclusory assertions of retaliation are insufficient to support a § 1983 claim. See Adams v. Rice, 40 F.3d 72, 74 (4th Cir. 1994).

For the reasons stated, the court concludes that Sherman's complaint fails to allege facts stating any actionable constitutional claim against anyone and will, therefore, dismiss the entire complaint without prejudice, pursuant to § 1915A(b)(1), for failure to state a claim.

The Clerk is directed to send copies of this memorandum opinion and accompanying order to plaintiff.

ENTER: This 30th day of November, 2011.

_____
Chief United States District Judge